**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | |
|---|---|
| GREGORY HIERHOLZER AND TOTAL CARE DENTISTRY, INC., | Case No. 2:23-cv-3650-RMG |
| Plaintiff, | |
| v. | **ORDER AND OPINION** |
| AUTO-OWNERS INSURANCE, | |
| Defendant. | |

Before the Court is Defendant's motion for summary judgment. (Dkt. No. 11). Plaintiffs filed a response (Dkt. No. 17), Defendant replied (Dkt. No. 18), and Plaintiffs filed a sur reply (Dkt. No. 22). For the reasons set forth below, the Court denies in part and grants in part Defendant's motion for summary judgment. (Dkt. No. 11).

## I.     Background

In this insurance claim action, Plaintiffs seek damages for negligence, bad faith, and breach of contract, which stem from Defendant's refusal to pay Plaintiffs certain insurance benefits allegedly due and payable under an insurance policy, Policy No. 46-591-765-00 ("Insurance Policy"). (Dkt. No. 1).

On June 29, 2020, Plaintiffs' insured property suffered a total fire loss. (Dkt. Nos. 1, 11). Following the fire, Plaintiffs made insurance claims for the loss of the dwelling, its contents, business interruption, extra expense, and for various other coverages, and Defendant, through its agents, investigated Plaintiffs' claim. (Dkt. Nos. 1, 11, 17). In March 2021, Plaintiffs sent two letters to Defendant demanding reimbursements for payments allegedly covered by the Insurance Policy. (Dkt. No. 17). On March 29, 2021, Defendant paid Plaintiffs for "recoverable depreciation & policy limit for business personal property & additional coverage debris removal." (Dkt. No.

17, at 6). After Plaintiffs sent another demand letter, Defendant sent Plaintiffs checks for "business income loss," and payments for "office rental." (Dkt. No. 17, at 6).

Plaintiffs agree that Defendant has paid Plaintiffs for "debris removal, coverage for the building itself, personal property inside of the Subject Property, extra expense for rent, and some monies for loss of income." (Dkt. No. 1, ¶ 19). However, Plaintiffs argue that "Defendant has failed and refused to pay the remaining benefits owed to Plaintiffs." (*Id.*). Plaintiffs allege they are owed money for "business interruption, payroll and net income expenses, and also a fire department service charge." (Dkt. No. 11, at 1-2). Specifically, Plaintiffs allege that Defendant owes them "a sum in excess of $310,000.00," plus "consequential damages" and "reasonable attorney's fees." (Dkt. No. 1, ¶¶ 21-23).

## II.    Legal Standard

Summary judgment is appropriate if a party "shows that there is no genuine dispute as to any material fact" and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A dispute is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *See id.*  Therefore, summary judgment should be granted "only when it is clear that there is no dispute concerning either the facts of the controversy or the inferences to be drawn from those facts. *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987).

"In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities in favor of the nonmoving party." *HealthSouth Rehab. Hosp. v. Am. Nat'l Red Cross*, 101 F.3d 1005, 1008 (4th Cir. 1996). The movant bears the initial burden of demonstrating that there is no genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477

U.S. 317, 323 (1986). Once the moving party has made this threshold demonstration, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue to survive the motion for summary judgment. *See id.* at 324. Under this standard, "[c]onclusory or speculative allegations do not suffice, nor does a 'mere scintilla of evidence'" in support of the non-moving party's case. *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002) (quoting *Phillips v. CSX Transp., Inc.*, 190 F.3d 285, 287 (4th Cir. 1999)).

### III.    Discussion

For the reasons outlined below, Defendant's motion for summary judgment is denied in part and granted in part.

### A. Bad Faith

Plaintiffs allege Defendant acted in bad faith and requests consequential damages. (Dkt. No. 1, ¶¶ 32-33). Because consequential damages are available on a claim for bad faith refusal to process a claim, rather than to pay a claim, the Court construes Plaintiffs' cause of action as for bad faith refusal to process a claim. *See Tadlock Painting Co. v. Md. Cas. Co.*, 473 S.E.2d 52, 53 (S.C. 1996) ("[I]f an insured can demonstrate bad faith or unreasonable action by the insurer *in processing a claim* under their mutually binding insurance contract, he can recover consequential damages in a tort action.") (emphasis in original). The elements of a cause of action for bad faith refusal are "(1) the existence of a mutually binding contract of insurance between the Plaintiffs and defendant; (2) refusal by the insurer to pay benefits due under the contract; (3) resulting from the insurer's bad faith or unreasonable action in breach of an implied covenant of good faith and

3

fair dealing arising on the contract; (4) causing damages to the insured." *Crossley v. State Farm Mut. Auto. Ins. Co.*, 415 S.E.2d 393, 396-97 (S.C. 1992).

Disputes regarding the value of an insurance claim do not automatically constitute bad faith under South Carolina law. *See McCray v. Allstate Ins. Co.*, 2017 WL 6731594, at *6 (D.S.C. Oct. 11, 2017); *see also Jordan v. Allstate Ins. Co.*, 2016 WL 4367080, at *6 (D.S.C. Aug. 16, 2016), *aff'd*, 678 Fed.Appx. 171 (4th Cir. 2017) ("if there is a reasonable ground for offering less than the full amount demanded on a claim, then there is no bad faith in negotiations"). However, even if Defendant did not violate the contract, they can still be liable for bad faith refusal to process a claim. *Jordan v. Allstate Ins. Co.*, 2016 WL 4367080, at *4 (D.S.C. Aug. 16, 2016). ("Because a bad faith action lies in tort and not in contract, a bad faith claim may exist even in the absence of any violation of an insurance contract provision."). Further, "[w]hether such an objectively reasonable basis for denial existed depends on the circumstances existing at the time of the denial." *Shiflet v. Allstate Ins. Co.*, 451 F. Supp. 2d 763, 772 (D.S.C. 2006) (citing *State Farm Fire and Cas. Co. v. Barton*, 897 F.2d 729, 731 (4th Cir. 1990) (interpreting South Carolina law)).

Here, it is uncontested that Plaintiffs and Defendant entered into a mutually binding insurance contract. (Dkt. No. 1, ¶ 8; Dkt. No. 11 at 2). It is also uncontested that Defendant refused to pay benefits under the Insurance Policy for eight months. (Dkt. No. 17, at 6; Dkt. No. 18, at 3). The contested elements are whether refusing to pay benefits for eight months was the result of bad faith or unreasonable action (Dkt. No. 17, at 8; Dkt. No. 18, at 3), and whether Plaintiffs suffered damages as a result. (Dkt. No. 22, at 3; Dkt. No. 18, at 2).

Plaintiffs argue that Defendant's "delay in payment is unreasonable." (Dkt. No. 22, at 3) and that they are owed "consequential damages, attorney's fees, and costs." (Dkt. No. 1, ¶ 33). Defendant argues that "Plaintiffs have provided . . . no opinion or case law holding that the personal

property payment from eight months after the fire was unreasonable as a matter of law." (Dkt. No. 18, at 3). A summary judgment motion merely looks to whether there is a dispute as to a material fact, and the Fourth Circuit has noted that "[u]nder South Carolina law, the issue of the reasonableness and good faith of the insurance company's action is to be determined by a jury" *Smith v. Maryland Cas. Co.*, 742 F.2d 167, 170 (4th Cir. 1984). A reasonable fact finder could conclude that Defendant acted in bad faith by unreasonably delaying any coverage.

Defendant also argues that "a mere disagreement over the value of a claim is not bad faith." (Dkt. No. 18, at 2). However, Plaintiffs' bad faith claim largely rests on whether the payment was unreasonably delayed, not whether the amount paid was sufficient. (Dkt. No. 1, ¶ 32).

The jury should decide whether waiting eight months to pay the original claim constitutes bad faith. Accordingly, Defendant's motion for summary judgment as to Plaintiffs' bad faith claim is denied.

### B. Negligence

Plaintiffs allege that Defendant was negligent in its handling of Plaintiffs' claim. (Dkt. No. 1, ¶¶ 41-46). A negligence claim consists of three elements: "(1) a duty of care owed by the defendant to the plaintiff; (2) a breach of that duty by a negligent act or omission; and (3) damage proximately resulting from the breach." *Crolley v. Hutchins*, 387 S.E.2d 716, 717 (S.C. Ct. App. 1989). In South Carolina, negligence has been defined as "the failure to do what a reasonable and prudent person would ordinarily have done under the circumstances of the situation." *Springs on behalf of C.S. v. Waffle House, Inc.*, 2021 WL 638816, at *6 (D.S.C. Feb. 18, 2021) (citing *Jones v. American Fidelity & Cas. Co.*, 210 S.C. 470, 478 (1947)).

Here, it is uncontested that Defendant owed Plaintiffs a duty of care as outlined in the Insurance Policy. (Dkt. No. 1, ¶ 42; Dkt. No. 11, at 2). The elements that are contested are whether

Defendant breached that duty and what the damages are. Plaintiffs argue that Defendant's "delay in payment is unreasonable" (Dkt. No. 22, at 3) and resulted in actual and consequential damages. (Dkt. No. 1, ¶ 44-46). Defendant argues that "there was an objectively reasonable basis to [Defendant's] handling of Plaintiffs' claim." (Dkt. No. 18, at 10).

Defendant further argues that "Plaintiffs have provided . . . no opinion or case law holding that the personal property payment from eight months after the fire was unreasonable as a matter of law." (Dkt. No. 18, at 3). As noted above, a summary judgment motion merely looks at whether there is a dispute as to a material fact, and as the Fourth Circuit has noted, a "defendant's breach of the duty of care is a question of fact." *Est. of Cantrell by Cantrell v. Green*, 302 S.C. 557, 560, (Ct. App. 1990). Because a defendant's breach is a question fact for the jury to consider, Defendant's motion for summary judgment as to the negligence claim is denied.

### C. Breach of Contract

"The elements for a breach of contract are the existence of the contract, its breach, and the damages caused by such breach." *S. Glass & Plastics Co. v. Kemper*, 399 S.C. 483, 491 (Ct. App. 2012). It is undisputed that the parties entered into a contract. (Dkt. No. 1 ¶ 42; Dkt. No. 11, at 2). The disputed elements are whether there was a breach and whether there are damages as a result. Plaintiffs allege that Defendant breached the following provisions of the insurance policy: Businessowners Special Property Coverage Forms (A)(1)(b) Business Personal Property, (A)(5)(c) Fire Department Service Charge, (A)(5)(f) Business Income, (A)(5)(g) Extra Expense, and (C)(4)

Inflation Guard. (Dkt. No. 11-4, ¶ 4). For the reasons outlined below, Defendant's motion for summary judgment is denied in part and granted in part as to the breach of contract claims.

### a. Business Personal Property

Plaintiffs allege that Defendant breached Businessowners Special Property Coverage Form (A)(1)(b) of the Insurance Policy, which covers Business Personal Property. (Dkt. No. 11-4, ¶ 4). According to the Insurance Policy, Business Personal Property includes:

> (1) Property you own that is used in your business; (2) Property of others that is in your care, custody or control; but this property is not covered for more than the amount for which you are legally liable, plus the cost of labor, materials or services furnished or arranged by you on personal property of others; and (3) Tenant's improvements and betterments. Improvements and betterments are fixtures, Alterations, installations or additions: (a) Made a part of the building or structure you occupy but do not own; and (b) You acquired or made at your expense but cannot legally remove.

(Dkt. No. 11, at 9). Plaintiffs have failed to demonstrate a genuine issue as to a material fact regarding this claim because the evidence shows that Defendant paid what was owed under the provision. For example, Dr. Gregory Hierholzer noted in his deposition that Defendant "paid the limit" "under the policy for business personal property." (Hierholzer Dep., at 76:14-77:15). Additionally, Defendant's field claim representative, Donnie Wheeler, stated in his affidavit that Defendant "has paid Plaintiffs the policy limit for Businessowners Special Property Coverage Form (A)(1)(b) — Business Personal Property for the Claim under the Policy," (Wheeler Aff., ¶ 5). Moreover, in Plaintiffs' complaint, they provide that "Defendant has paid Plaintiffs for . . . personal property inside of the Subject Property" (Dkt. No. 1, ¶ 19). Plaintiffs have failed to point

to any evidence showing Defendant breached this provision. Accordingly, Defendant's motion for summary judgment as to the Business Personal Property breach of contract claim is granted.

### b. Fire Department Service Charge

Plaintiffs has withdrawn the breach of contract claim regarding the fire department service charge (Dkt. No. 22) and therefore, Defendant's motion for summary judgment as to this claim is moot.

### c. Business Income

Plaintiffs have shown a genuine dispute regarding whether Defendant has paid the full amount of Business Income pursuant to Businessowners Special Property Coverage Form (A)(5)(f) of the Insurance Policy. According to the Insurance Policy, Defendant agreed that:

> We will pay for the actual loss of Business Income you sustained due to the necessary suspension of your "operations" during the "period of restoration". The suspension must be caused by direct physical loss of or damage to property at the described premises, including personal property in the open (or in a vehicle) within 100 feet, caused by or resulting from any Covered Cause of Loss. We will only pay for loss of Business Income that occurs within 12 consecutive months after the date of direct physical loss or damage. This Additional Coverage is not subject to the Limits of Insurance. Business Income means the: (1) Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred; and (2) Continuing normal operating expenses incurred, including payroll.

(Dkt. No. 11, at 10). Defendant alleges that the $43,987.49 it paid Plaintiffs for Business Income includes Net Income and Continuing Normal Operating expenses, including payroll. (Dkt. No. 11, at 16). Plaintiffs allege that Defendant paid them $43,987.49 in Net Income and but owes $197,600.00 in Continuing Normal Operating Expenses. (Dkt. No. 11-4, ¶ 9; Dkt. No. 11, at 16-17). Plaintiffs allege that that Defendant's method for determining business income was

inconsistent and a misinterpretation of the policy (Dkt. No. 17, at 11), and Defendant alleges Plaintiffs misinterpret the policy. (Dkt. No. 11, at 17).

A key factor in determining the amount of Continuing Normal Operating Expenses is when Plaintiffs' new temporary work location became permanent. (*see* Dkt. No. 11-1). Defendant argues that it is "undisputed that the temporary location became Plaintiffs' permanent location at the end of November 2020," (Dkt. No. 18, at 4-5), and Plaintiffs argue that "the temporary location did not become Plaintiffs' permanent location and the 'new normal' at the end of November 2020." (Dkt. No. 22, at 1).

Factual discrepancies exist as to when Plaintiffs continued operations, and therefore how much Defendant owes for Business Income coverage pursuant to Businessowners Special Property Coverage Form (A)(5)(f) of the Insurance Policy. Defendant's motion for summary judgment as to the Business Income breach of contract claim is denied.

### d. Extra Expense

Plaintiffs allege that Defendant breached Businessowners Special Property Coverage Form (A)(5)(g) of the Insurance Policy, which covers Extra Expenses, by failing to provide full coverage. (Dkt. No. 17, at 9). According to the Insurance Policy,

> Extra Expense means expense incurred: (1) To avoid or minimize the suspension of business and to continue "operations": (a) At the described premises; or (b) At replacement premises or at temporary locations, including: (i) Relocation expenses; and (ii) Costs to equip and operate the replacement or temporary locations. (2) To minimize the suspension of business if you cannot continue "operations". (3) (a) To repair or replace any property; or (b) To research, replace or restore the lost information on damaged valuable papers and records; to the extent it reduces the amount of loss that otherwise would have been payable under this Additional Coverage or Additional Coverage f., Business Income.

(Dkt. No. 11, at 10). Plaintiffs allege that Extra Expenses include relocation expenses, costs to equip and operate the replacement or temporary locations, and costs to repair or replace any

property. (Dkt. No. 17, at 9). Plaintiffs allege that they are entitled to $88,501.29 in Extra Expenses and that "the only extra expense that was paid was relocation rent. No other extra expense was paid despite documentation and repeated requests." (Dkt. No. 1, ¶ 10; Dkt. No. 17, at 9). Defendant stated that "any claimed loss of business income expense and extra expense ceased to exist when the temporary location became the permanent location." (Dkt. No. 18, at 5). As stated above, there is a genuine dispute as to when Plaintiffs' new establishment became permanent, and therefore there is a dispute as to how much Extra Expenses are owed.

Further, Mrs. Hierholzer, a bookkeeper and office manager for Plaintiffs, "provided numerous records with documentation of loss, including notes for the purpose of each expense, including, as just a few examples, new signage, new dental supplies, equipment, uniforms, laptop, etc." (Dkt. No. 22, at 6). However, Defendant alleges that "Plaintiffs have not presented any testimony setting forth what the 'extra expense' incurred which would not have occurred but for the fire loss" (Dkt. No. 18, at 6), and that "Plaintiff is not contractually entitled to any further monies." (Dkt. No. 18, at 9). There is a factual dispute as to how much Defendant owes Plaintiffs in Extra Expenses and therefore, Defendant's motion for summary judgment as to the Extra Expenses breach of contract claim is denied.

### e. Inflation Guard Coverage

Plaintiffs allege that Defendant breached the Insurance Policy as it relates to Inflation Guard Coverage under Businessowners Special Property Coverage Form (C)(4). (Dkt. No. 11-4, ¶ 4). Dr. Hierholzer admitted to receiving a check for $1,230.282.48 and that "this check constitutes the coverage available under the policy for the building itself adjusted for the inflation guard." (Hierholzer Dep. 54:9-13). Defendant notes that "there is no genuine issue of material fact as it relates to this portion of Plaintiffs' claim and Owners is entitled to judgement as a matter of

law." (Dkt. No. 11, at 20). Plaintiffs have failed to respond to this aspect of their breach of contract claim. Therefore, no genuine issue of material fact exists and Defendant's motion for summary judgment as to the Inflation Guard breach of contract claim is granted.

### D. Attorneys Fees

South Carolina law provides that policyholders can recover attorney's fees when they show that a denial of a claim was unreasonable or in bad faith. *See* S.C. Code Ann. § 38-59-40. Defendant's argument to dismiss Plaintiffs' claims for attorney's fees rests on the assumption that Plaintiffs have failed to demonstrate a dispute as to a material fact of the underlying bad faith claim. As stated above, Plaintiffs have sufficiently established a dispute as to a material fact of the bad faith claim, and therefore Defendant's motion for summary judgment as to the attorney's fees is denied.

### IV.    Conclusion

In light of the foregoing, Defendant's motion for summary judgment is **GRANTED** as to the Business Personal Property and the Inflation Guard breach of contract claims and **DENIED** as to all other claims. (Dkt. No. 11).

**AND IT IS SO ORDERED.**

 s/ Richard Mark Gergel 
Richard Mark Gergel
United States District Judge

October 24, 2024
Charleston, South Carolina